Filed 10/4/24  P. v. Hudson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C099531 |
| Plaintiff and Respondent, | (Super. Ct. No. 62185828) |
| v. | |
| DAVID EUGENE HUDSON, SR., | |
| Defendant and Appellant. | |

A jury convicted defendant David Eugene Hudson, Sr., of driving under the influence (DUI) of a controlled substance and causing injury.  Defendant claims the trial court abused its discretion, in violation of his Sixth Amendment right to confrontation, by excluding evidence, which defendant claims he would have used to impeach the credibility of the prosecution's drug recognition expert.  We conclude the trial court did not abuse its discretion or violate defendant's constitutional rights.  We will affirm the judgment.

1

# FACTUAL AND PROCEDURAL BACKGROUND

In June 2022, E.F.[1] was stopped at a stoplight. When the light turned green, she drove into the intersection. As she passed through the intersection, defendant drove through the red light and crashed into the side of E.F.'s car. E.F. got out of her car and called 911. As she did, she saw two passengers from defendant's car grab items from the car and flee. E.F. suffered back, neck, and head pain because of the car crash.

D.A. was driving behind defendant at the time of the crash and saw defendant run the red light and collide into E.F.'s car. D.A. saw defendant and two passengers get out of defendant's car. They acted as if they were under the influence of drugs or alcohol, moving erratically, speaking in incomplete sentences, and could not focus their eyes. Initially, all three fled, but defendant returned after a few minutes.

Roseville Police Officer Michael Keck was the first officer to arrive at the crash scene and noticed defendant was agitated and cursing. Officer Keck had significant training and experience in recognizing the signs and symptoms of someone under the influence of drugs and was a certified drug recognition expert for the police department. When Officer Keck arrived at the scene, he met with defendant and started the DUI investigation.

Officer Keck observed defendant's speech was slightly slow and slurred but would momentarily become very rapid. Defendant had a hard time following instructions. Based on his training, experience, and observations of defendant, Officer Keck asked defendant when he last used methamphetamine. Defendant responded, "I don't use meth." But defendant acknowledged he had taken Soma and Norco, which he said a doctor prescribed.

---

[1] To protect their privacy, we refer to the victim and witnesses by their initials. (Cal. Rules of Court, rule 8.90(b)(4), (10).)

Officer Cassandra Mohring arrived after Officer Keck and completed the DUI investigation at the crash scene. Officer Mohring had received training on drug-related investigations, drivers under the influence, and field sobriety tests. She had also investigated at least 50 people who were suspected of being under the influence of drugs or alcohol and could recognize the common signs and symptoms of people using methamphetamine.

Officer Mohring noticed defendant was very fidgety, appeared paranoid, and had slightly slurred speech. He was also grinding and clenching his jaw and licking his lips. Defendant told Officer Mohring that he was on DUI probation and denied taking any drugs that day.

Officer Mohring had defendant take a breathalyzer test, which did not detect alcohol in his system. Officer Mohring then conducted several field sobriety tests on defendant, including the horizontal and vertical gaze nystagmus (HGN) test, the modified Romberg test, and the finger-to-nose test.

During the HGN test, in which defendant followed the movement of a finger or pen with his eyes, his eyes could not smoothly follow the movement from left to right; involuntary jerked when looking left, right, and vertically; and did not converge when a stimulus was moved closer to his nose. These results are consistent with impairment. Defendant took the modified Romberg test, in which he stood with his feet together, eyes closed, head tilted back, and estimated the passage of 30 seconds. He also did the finger-to-nose test, in which he stood, arms stretched to the side, eyes closed, head tilted back, and attempted to touch his nose with his left and right index fingers. During both tests, defendant swayed in a slow circular motion, had a hard time keeping his head tilted back, had a rigid and flexed body, and had rapid eyelid tremors when his eyes were closed. Defendant also had difficulty focusing and following directions during the tests and could only successfully complete half of the finger-to-nose touches. Based on her observations

and the test results, Officer Mohring arrested defendant for DUI.  The officers then took defendant to the hospital to treat his injuries from the crash.

While at the hospital, Officer Keck read defendant his *Miranda*[2] rights, defendant provided a blood sample, and Officer Keck conducted a drug recognition evaluation on defendant.  The drug recognition examination is a 12-step evaluation used to determine whether someone is under the influence of drugs or alcohol.  The evaluation starts with an interview, includes the same field sobriety tests Officer Mohring previously conducted at the crash scene, and concludes with the officer's impairment opinion and a subsequent toxicology report.  During the interview, defendant said he took Soma between 8:00 a.m. and 9:00 a.m.  He also admitted to eating methamphetamine approximately four hours prior to the examination.  Defendant said he did not feel the effects from either the methamphetamine or the Soma.

During the second HGN test, defendant's eyes could not smoothly track, had a sustained nystagmus, and his left eye would not converge.  Defendant also did another modified Romberg test.  He swayed, mouth open, eyes fluttering, and estimated 30 seconds after only 17 seconds.  Defendant could not perform the heel-to-toe test correctly, had difficulty with the finger-to-nose test, and said he could not complete the one-leg stand test for medical reasons.

At the hospital, defendant's temperature, pulse, and blood pressure all lowered a little, indicating to Officer Keck that defendant was sobering up.  However, defendant's eyes were still dilated above the normal range and his reaction to light was slow.  His muscle tone was rigid and consistent with being under the influence of a stimulant.  Defendant also had burn bumps and green film on his tongue and suffered from tooth decay, indicating potential drug use.

---

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436.

As Officer Keck finished the drug recognition evaluation, defendant said he learned a lesson not to take the pills and drive and that he would have never taken methamphetamine if his friend was not there or if he was not tired. Officer Keck asked defendant, "[D]o you feel like . . . you were safe to be driving? Or do you feel like the pills and the meth kind of threw you off?" Defendant responded, "It probably threw me off." After completing the drug recognition evaluation, Officer Keck rendered his opinion that defendant was too impaired to drive.

The results from the toxicology report were consistent with Officer Keck's impairment opinion. The toxicology report found the levels of methamphetamine in defendant's system were at an amount that a person would expect to experience its effects. Defendant also tested positive for Soma, Norco, Xanax, Ultran, and amphetamine. Based on hypothetical facts mirroring the facts of the underlying case, the prosecution's toxicology expert opined that defendant was too impaired to safely drive a car.

At trial, the prosecution played Officer Keck's body camera footage for the jury, which depicted Officer Keck's interaction with defendant. Based on a hypothetical scenario that tracked the underlying facts of the case, Officer Keck testified defendant was not safe to drive his car because he was under the influence of a suppressant and a stimulant.

Defense counsel cross-examined Officer Keck on how he conducted the drug recognition evaluation. During closing argument, defense counsel attacked Officer Keck's credibility and the reliability of the drug recognition evaluation. Defense counsel argued Officer Keck's testimony showed he wanted the jury to believe defendant was guilty. He further argued the results of the drug recognition evaluation were not reliable and inconsistent, Officer Keck's evaluation was not fair, and Officer Keck was not credible. A jury found defendant guilty of DUI (a drug) and causing injury (Veh. Code, § 23153, subd. (f)). The trial court also found true two special allegations and four

5

factors in aggravation.  The trial court sentenced defendant to the upper term of four years.

## DISCUSSION

Defendant claims the trial court improperly excluded an e-mail that demonstrated Officer Keck's bias against defendant.  Defendant argues the trial court abused its discretion under Evidence Code[3] section 352, which also violated his Sixth Amendment right to confront an adverse witness.  We conclude the trial court did not abuse its discretion or violate defendant's Sixth Amendment confrontation right.

*Additional Facts*

In August 2023, the prosecution sent Officer Keck an e-mail regarding three drugs found in the toxicology report:  Norco, Ultran, and Xanax.  Officer Keck responded the following day and stated in relevant part, "Regardless of impairment, it would be really nice to just paint a picture of [defendant] being a drug addict because that is exactly what he is.  Imagine if you had to take Xanax, [Norco], [Ultran], Soma's [*sic*] then Methamphetamine to stay awake in a 24 hour period and try to function in a normal society by doing things like driving."

Prior to trial, the prosecution moved to exclude the e-mail arguing Officer Keck's opinion on trial strategy was not relevant, had no impeachment value, and any probative value it may have had was substantially outweighed by the prejudice to the defendant.  The prosecution asserted defendant would suffer prejudice if defense counsel attempted to impeach Officer Keck with the e-mail because it would open the door for the prosecution to rehabilitate Officer Keck with evidence that the trial court excluded for the benefit of defendant, such as:  defendant's prior DUI arrests, and that defendant had a secure continuous remote alcohol monitoring (SCRAM) device and was on probation at

---

[3] Undesignated statutory references are to the Evidence Code.

the time of his arrest. The prosecution further argued that admitting the e-mail would confuse the jury and unduly consume time.

Defense counsel argued the e-mail was "very probative to [Officer Keck's] bias in creating an impairment opinion." Counsel continued that he was not seeking to admit the e-mail for the truth of Officer Keck's statement and therefore it would not open the door for other excluded material to come into evidence. Defense counsel asserted because Officer Keck's testimony would be "all about impairment," defendant should have the opportunity to cross-examine Officer Keck on whether he could unbiasedly render an impairment opinion.

The trial court disagreed with defense counsel, finding admission of the e-mail would require the prosecution to rehabilitate Officer Keck by comparing what information he had when he made the impairment assessment at the time of arrest in June 2022, versus what information Keck had at the time he drafted the e-mail in August 2023. It found Officer Keck's impairment opinion would necessarily include all the information he had at the time he formed the opinion, and the trial court wanted to avoid a scenario where previously excluded evidence came into evidence to rehabilitate Officer Keck's credibility. The trial court "really considered" the time when Officer Keck wrote the e-mail and initially ruled defendant could ask Officer Keck about the e-mail at trial, but also stated that questioning would open the door for the prosecution to admit any evidence of defendant's history that Officer Keck was aware of at the time he wrote the e-mail.

During trial, defense counsel filed a supplemental motion to allow defendant to introduce the e-mail into evidence. The trial court asked, "How does a statement in August . . . of 2023 impact the determination of impairment in June of 2022 at the time of arrest?" Defense counsel argued the e-mail showed Officer Keck had "become an advocate" and was taking defendant's character into account. The prosecution again asserted the e-mail had no probative value. It additionally argued the e-mail was actually

7

beneficial for defendant because it indicated that it would be difficult for Officer Keck to conclude defendant was impaired by the Norco, Ultran, and Xanax.

The trial court emphasized the timing of the e-mail. It said Officer Keck wrote the e-mail after he had received the results of the toxicology report, prescription drug report, and defendant's prior convictions, which he did not have at the time he rendered his impairment opinion. The trial court found the e-mail was not relevant to the issue of Officer Keck's impairment opinion or the decision to arrest defendant based on that opinion. The trial court also did not "want to have a trial within a trial," which would be "far more confusing to the jury than would be probative." It found that allowing defense counsel to cross-examine Officer Keck about the e-mail would create a substantial danger of undue prejudice and be "extremely detrimental" to defendant because defendant's entire history would come in even though it was previously excluded to his benefit. The trial court denied defendant's supplemental motion pursuant to section 352.

*Abuse of Discretion*

We review the trial court's ruling to exclude evidence under section 352 for abuse of discretion. (*People v. Lewis* (2001) 26 Cal.4th 334, 374-375.) Under section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." " '[T]he latitude section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.' " (*People v. Ayala* (2000) 23 Cal.4th 225, 301.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*People v. Clark* (2011) 52 Cal.4th 856, 932.) A trial court does not abuse its discretion under section 352 unless it

rules in an arbitrary, capricious, or patently absurd manner. (*People v. Johnson* (2019) 8 Cal.5th 475, 521.) Defendant has not established an abuse of discretion.

The record shows the trial court carefully considered the probative value of the e-mail related to Officer Keck's alleged bias in forming his impairment opinion. It found the e-mail was not relevant because Officer Keck formed his impairment opinion at the time of arrest and he wrote the e-mail 14 months later. When Officer Keck wrote the e-mail, he had significantly more information regarding defendant's history than he did when he formed his opinion. For example, at the time of arrest, Officer Keck was unaware of the toxicology report, which indicated defendant had Xanax, Norco, and Ultran in his system; defendant's prior DUI arrests, and that defendant had a SCRAM device and was on probation at the time of his arrest. Any attack of Officer Keck's credibility related to bias in rendering his impairment opinion would have had to look to contemporaneous statements and actions made by Officer Keck during the DUI investigation when he formed the opinion. The e-mail did not include any evidence contemporaneous to the time of arrest and therefore, the e-mail was not relevant to Officer Keck's impairment opinion.

Moreover, to the extent the e-mail had any probative value, it was substantially outweighed by the prejudicial effect to defendant. As the trial court noted, if defendant used the e-mail to impeach Officer Keck's credibility, it would open the door for the prosecution to rehabilitate him with evidence that the trial court previously excluded to defendant's benefit. This evidence would be "far more confusing to the jury than would be probative" and "extremely detrimental" to defendant. The trial court also stated it did not "want to have a trial within a trial." The trial court did not abuse its discretion by excluding the e-mail.

*Sixth Amendment*

"Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and

9

to whatever extent, the defense might wish." (*Delaware v. Fensterer* (1985) 475 U.S. 15, 20.) "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) This means " 'reliance on . . . section 352 to exclude evidence of marginal impeachment value . . . generally does not contravene a defendant's constitutional rights to confrontation and cross-examination.' " (*People v. Riccardi* (2012) 54 Cal.4th 758, 809-810, disapproved on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) "A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.) We review this issue de novo. (*People v. Castaneda-Prado* (2023) 94 Cal.App.5th 1260, 1283.)

The trial court did not violate defendant's constitutional right to confront an adverse witness because the e-mail was not relevant to demonstrate Officer Keck's bias in rendering an impairment opinion at the time of arrest. The statement in the e-mail, sent over a year after defendant's arrest, was Officer Keck's opinion on trial strategy. The e-mail referenced defendant's use of three drugs that Officer Keck was unaware were in defendant's system when he formed his impairment opinion.

Had the trial court admitted the e-mail, the prosecution indicated it would have rehabilitated Officer Keck's credibility by introducing evidence of defendant's history, which he learned about after the date of the arrest. Furthermore, defense counsel *was* afforded the opportunity to cross-examine Officer Keck on his credibility and the reliability of the drug recognition evaluation. At closing, defense counsel argued Officer Keck's drug recognition examination results were unreliable and inconsistent and that

Officer Keck wanted to show defendant was guilty. As such, we cannot conclude a reasonable jury would have had a significantly different impression of Officer Keck had the trial court permitted cross-examination on the excluded e-mail. The trial court's ruling did not violate defendant's Sixth Amendment right to confrontation.

DISPOSITION

The judgment is affirmed.

/s/
WISEMAN J.*

We concur:

/s/
HULL, Acting P. J.

/s/
BOULWARE EURIE, J.

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11